2020 IL App (1st) 191659-U
No. 1-19-1659
December 31, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | ) ) ) | Appeal from the Circuit Court Of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 2018 CH 007062 |
| v. | ) | |
| | ) | The Honorable |
| BOBBY WILLIAMS, JENNIFER MATJASKO, | ) | Sophia H. Hall |
| and SAFECO INSURANCE COMPANY | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's decision to grant summary judgment in favor of defendant Safeco Insurance Company and deny State Farm Insurance Company's motion for summary judgment and motion for reconsideration.

¶ 2     Defendant Bobby Williams was involved in an automobile-bicycle accident with defendant Jennifer Matjasko. Williams's automobile insurer, Plaintiff State Farm Mutual Automobile Insurance Company (State Farm), filed a declaratory judgment action, seeking a declaration

that it had no duty to defend or indemnify Williams against Matjasko's insurance claim and lawsuit because Williams breached the notice and cooperation clauses of his policy. State Farm's complaint for declaratory judgment named Williams, Matjasko, and Safeco Insurance Company (Safeco), Matjasko's automobile insurer, as defendants. State Farm and Safeco filed cross-motions for summary judgment. The trial court denied State Farm's motion and granted Safeco's motion. State Farm subsequently filed a motion for reconsideration, which was also denied. State Farm now appeals the trial court's denial of its motion for summary judgment. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4        On November 1, 2016, Matjasko was riding her bicycle along Stony Island Avenue in Chicago when she was struck by a Ford vehicle with the license plate number L925320. The Chicago Police Department ("CPD"), Chicago Fire Department, and University of Chicago Police ("UCP") responded to the accident. The CPD prepared the Illinois Crash Traffic Report ("Traffic Report") and described the driver of the vehicle as a 50-year-old male with black hair, black t-shirt, gray pants, and a right-arm brace. The Traffic Report also indicated that the vehicle involved in the accident was registered to Williams. At the time of the accident, Safeco was the automobile insurer for Matjasko.

¶ 5        State Farm issued a policy of motor vehicle insurance to Williams for a 2016 Ford Taurus, license plate no. L925320, under policy no. D48 9452-F10-13. This policy included bodily injury liability coverage of $25,000 for each person and was in effect on November 1, 2016. The policy, provided in relevant part:

                INSURED'S DUTIES

1. Notice to Us of an Accident or Loss

The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

a. *your* name;

b. the names and addresses of all *persons* involved in the accident or *loss*;

c. the hour, date, place, and facts of the accident or *loss*; and

d. the names and addresses of witnesses to the accident or *loss*.

2. Notice to Us of a Claim or Lawsuit

a. If a claim is made against an *insured*, then that *insured* must immediately send us every demand, notice, and claim received.

b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send us every summons and legal process received.

3. Insured's Duty to Cooperate With Us

a. The *insured* must cooperate with us and, when asked, assist us in:

(1) making settlements;

(2) securing and giving evidence; and

(3) attending, and getting witnesses to attend, depositions, hearings, and trials.

¶ 6        Williams never notified State Farm of the November 1, 2016 accident. State Farm became aware of the accident through a letter dated May 18, 2017 from the law firm of Kulwin, Masciopinto and Kulwin, the attorneys for Matjasko.

¶ 7        From the date of the accident through at least the time State Farm filed its complaint for declaratory judgment, Williams has resided at 1512 W. 62nd Street, Apt. 2, Chicago, Illinois, and his cell phone number has remained the same.

¶ 8        Upon learning of the accident, State Farm, through its claim representatives, made attempts to contact Williams by mail and by telephone to investigate the facts of the accident. On May 18, 2017, State Farm sent Williams a letter stating a claim had been made under his insurance policy for the November 1, 2016 accident involving his 2016 Ford Taurus. On May 19, 2017, State Farm Claim Specialist Katrina Donaldson sent a letter to Williams stating she was unable to reach him by phone and requested he call State Farm to discuss the claim and the applicable coverage under his policy. Donaldson also attempted to contact Williams by phone beginning on May 18, 2017. Williams did not respond to either letter or Donaldson's voicemails.

¶ 9        On May 30, 2017, Donaldson sent a third letter to Williams stating she needed to speak with him as part of State Farm's investigation of the claim made against his policy. On June 7, 2017, Donaldson sent a fourth letter to Williams regarding State Farm's investigation into the November 1, 2016 accident. In the June 7, 2017 letter, State Farm notified Williams that based on its investigation, "we believe (you) Bobby Williams was [sic] liable for the accident. We will be extending the liability coverage of the policy in settling of the injuries [sic] related to this loss." Williams did not respond to any of these letters.

¶ 10        On June 19, 2017, State Farm Team Manager Mike Shackelford sent a reservation of rights letter to Williams, which stated that State Farm may have no duty to pay, indemnify, defend, or otherwise perform under the policy because of his refusal to assist in State Farm's

investigation of the accident. The letter stated that it was questionable whether he complied with the provision of the policy requiring his assistance and cooperation.

¶ 11    On July 26, 2017, State Farm advised Matjasko's attorney that it was denying liability. At the same time, State Farm noted internally that liability was being denied due to Williams's non-cooperation.

¶ 12    On August 16, 2017, Matjasko filed suit in the circuit court of Cook County against Williams alleging that she was injured because of the Williams's negligence in the operation of his vehicle. Matjasko's complaint alleged that Williams was driving down Stony Island Avenue on November 1, 2016 when he struck Matjasko while she was riding her bicycle. The complaint further alleged that Matjasko suffered injuries as a result and sought damages from Williams for the injuries.

¶ 13    On October 4, 2017, Matjasko's counsel advised State Farm that a lawsuit had been filed against Williams and service was effectuated. Williams was purportedly personally served with the summons and complaint on September 30, 2017. Williams never notified State Farm that he was served with summons or that he had been sued. That same day, Shackleford sent another reservation of rights letter to Williams. Both the June 19, 2017 and October 4, 2017, reservation of rights letters from State Farm were sent to Williams by certified mail but went unclaimed and were returned to State Farm. The October 4, 2017 letter, however, incorrectly listed Williams's address as Apartment 1 instead of Apartment 2.

¶ 14    State Farm retained the law firm of Lewis, Brisbois, Bisgaard and Smith LLP ("Lewis law firm") to defend Williams under a reservation of rights. In its October 11, 2017 letter retaining the Lewis law firm, State Farm advised it: (1) that it was a fact of the loss that Williams had

struck Matjasko with his car; (2) that there were no unusual circumstances; and (3) that no further investigation was needed. Additionally, the letter incorrectly listed Williams's address as Apartment 1.

¶ 15    On November 22, 2017, a State Farm claims investigator, Hector Ramos, traveled to the Williams's address where he found and identified the 2016 Ford Taurus with license plate no. L925320. Ramos rang the doorbell for Williams's apartment unit and was informed by an unidentified woman that Williams would come down to meet with the investigator. Ramos waited outside the apartment building for approximately an hour. While outside of Williams's residence, Ramos twice called Williams's cell phone, but both calls went unanswered. Williams never came to meet with Ramos. Ramos then left the October 4, 2017 reservation of rights letter with a handwritten note on the letter that read "PLEASE CALL US – Katrina Donaldson (844) 292-8615." Ramos also left an October 17, 2017 letter that requested Williams call attorney Gabriel Judd of the Lewis law firm in Williams's mailbox. Ramos also hung a "Let's Connect" doorknob hanger on the outside of Williams's apartment, which also directed Williams to call Donaldson.

¶ 16    On January 31, 2018, Judd sent a letter to Williams regarding written discovery. He requested that Williams contact him to discuss the discovery responses. On February 16, 2018, Judd sent another letter to Williams, with the caption "URGENT REQUEST – RESPONSE REQUIRED." That letter also requested that Williams call Judd to complete his outstanding written discovery answers. On March 20, 2018, Judd again wrote to Williams. The March 20, 2018 letter to Williams was captioned as "THIRD REQUEST – IMMEDIATE RESPONSE REQUIRED" and included the following warning:

"Pursuant to the terms and conditions of your insurance policy, you are required to cooperate in the defense of your case. Your continued failure to cooperate and actively participate in your defense may result in a denial of coverage and leave you personally responsible for any potential judgment entered by the Court in this matter."

¶ 17 The Lewis law firm hired a private investigator named Edward Sonne to personally hand-deliver the March 20, 2018 letter to Williams On March 20, 2018, Sonne attempted to deliver the letter, but Williams did not accept the letter. Sonne wrote a letter to Judd on March 21, 2018, informing Judd that Williams lived "on the second floor, not the first floor." Sonne also described Williams as "M/B 40/6'0"/245 right arm appeared to be in a cast."

¶ 18 The Lewis law firm advised State Farm on multiple occasions that it attempted to communicate with Williams by telephone and mail, but Williams did not answer his cell phone, did not respond to voicemail messages, and did not respond to mail. The Lewis Law firm withdrew its appearance on behalf of Williams on June 28, 2018.

¶ 19 On June 4, 2018, State Farm filed its complaint for declaratory judgment. The complaint sought a declaration that State Farm owed no duty to defend or indemnify Williams against Matjasko's claim arising from the November 1, 2016 accident because Williams violated the notice and cooperation provisions of his State Farm policy. State Farm named Williams, Matjasko, and Safeco, as defendants. Safeco was named because of its subrogation rights for both medical payments coverage and uninsured motorist coverage in the event Williams was declared to be uninsured.

¶ 20 On April 8, 2019, State Farm filed its motion for summary judgment. The motion was supported by affidavits from Donaldson, Ramos, Judd, and Sonne.

¶ 21    On April 30, 2019, Safeco filed a cross-motion for summary judgment. Safeco argued that State Farm failed to show that it was substantially prejudiced by Williams's lack of cooperation, as it had not presented evidence of other attempts to investigate the November 1, 2016 accident, and did not show that any adverse motions were granted, or discovery sanctions entered against Williams in the underlying matter before his defense attorneys withdrew from the case.

¶ 22    On May 17, 2019, at the conclusion of oral arguments, the trial court granted Safeco's motion for summary judgment and denied State Farm's motion for the same, finding that State Farm did not meet its burden in showing that it was substantially prejudiced by Williams's lack of cooperation. The court determined that State Farm had other sources of investigating the November 1, 2016 accident, and that it had failed to show how it was substantially prejudiced in its defense of the underlying matter when it did not seek out information from other witnesses.

¶ 23    Following the trial court's ruling, State Farm subpoenaed any reports that the University of Chicago police department would have made for the November 1, 2016 accident. State Farm's attorneys learned, through their contact with the University of Chicago Department of Safety and Security, that no official report was ever made for the November 1, 2016 accident by the UCP officers who were on scene following the accident. However, through their subpoena, counsel for State Farm received dispatch notes for the November 1, 2016 accident. This dispatch record indicated that no named eyewitnesses to the accident existed.

¶ 24    The record states that "Allied Barton" called in the accident. "Allied Barton" is Allied Barton Security Services, now known as Allied Universal Security Systems, which is the

security service contracted by University of Chicago for its Campus Safety Division. The narrative on the second page of the record states that Matjasko "was struck by a blue Ford Stratus" but does not identify Williams as being the driver of the vehicle. No description of the driver was provided.

¶ 25     State Farm subsequently filed a motion for reconsideration, arguing that the trial court misapplied the law when it granted Safeco's motion for summary judgment and denied State Farm's motion for summary judgment.

¶ 26     Safeco opposed State Farm's request for reconsideration, arguing that the information obtained from the UCP had been available to State Farm prior to the motions for summary judgment. Therefore, State Farm could not base a motion for reconsideration on that information. The trial court denied State Farm's motion for reconsideration on August 7, 2019.

¶ 27     This timely appeal followed.

¶ 28                                         ANALYSIS

¶ 29     On appeal, State Farm argues that the trial court erred in denying its motion for summary judgment because Williams breached the notice and cooperation clauses in his State Farm policy. State Farm contends the trial court's decision was inconsistent with established precedent and public policy and placed an extreme burden on State Farm to prove substantial prejudice while excusing Williams's failure to abide by his insurance policy. State Farm also argues that because Williams is uninsured, Matjasko is entitled to uninsured motorist coverage with Safeco.

¶ 30     Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law. *Travelers Property Casualty Company of America v. ArcelorMittal USA Inc.*, 2019 IL App (1st) 180129, ¶ 11. Our function is to determine whether the trial court correctly found that no genuine issue of material fact existed and whether it correctly granted summary judgment in defendants' favor and denied plaintiff's motion for summary judgment. *Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 10. "It is the trial court's judgment and not its reasoning that is on appeal." *Id.*

¶ 31    "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064 ¶ 28. The appellate court reviews a grant of summary judgment *de novo. Bankers Life & Cas. Co. v. Am. Senior Benefits LLC*, 2017 IL App (1st) 160687, ¶ 13.

¶ 32    The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law that are appropriate subjects for summary judgment. *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 156 Ill. 2d 384, 391 (1993). "In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." *Id.* at 391. To ascertain the meaning of the policy's words, the court must view the policy as a whole, taking into account the type of insurance purchased, the risk undertaken, and the overall purpose of the contract. *AMCO Insurance Co. v. Erie Insurance Exchange*, 2016 IL App (1st) 142660, ¶ 20.

¶ 33    The first basis for State Farm's requested denial of coverage is Williams's failure to comply with the notice requirements of his policy. Williams's policy required him to give State Farm or one of its agents notice of an accident or loss as soon as reasonably possible. The purpose

of a notice requirement is to enable the insurer to timely investigate and defend claims against its insured. *Zurich Ins. Co. v. Walsh Const. Co. of Illinois, Inc*., 352 Ill. App. 3d 504, 508 (2004). "The notice provisions are not merely technical requirements but, rather, conditions precedent to the triggering of the insurer's contractual duties." *Id.* Thus, an insurer may be justified in denying coverage to an insured who fails to comply with the notice provision contained in the insurance policy. *Id.*

¶ 34        Here, Williams never notified State Farm of the November 1, 2016 accident. State Farm received notice of the accident on May 18, 2017 from Matjasko's counsel. However, lack of notice by the insured to the insurer is not dispositive of this issue. The notice requirement can be satisfied if an insurer receives actual notice of an accident or claim from a party other than the insured, such as the claimant. *West Am. Ins. Co. v. Yorkville Nat'l Bank*, 238 Ill. 2d 177, 189 (2010). Actual notice exists where an insurer "has sufficient information to locate and defend the suit." *Id*. at 190. State Farm does not dispute that it received actual notice from Matjasko's counsel on May 18, 2017. Hence, the issue is whether the actual notice was timely.

¶ 35        Illinois courts have established a multi-factor test to determine whether the notice to an insurer is timely. *Country Mut. Ins. Co. v. Livorsi Marine, Inc*., 222 Ill. 2d 303, 313 (2006). These factors include prejudice to the insurer resulting from the delay, "the specific language of the policy's notice provision, the insured's sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, and the insured's diligence in ascertaining whether policy coverage is available." *Id.* Three of these factors involve the insured's state of mind and since Williams never provided notice, those

11

factors are inapplicable here. Therefore, whether actual notice was timely depends on any prejudice to State Farm and the specific language of Williams's policy.

¶ 36    There is a "strong public policy in favor of coverage." *Cincinnati Cos v. W. Am. Ins. Co.*, 183 Ill. 2d 317, 323 (1998). State Farm received notice on May 18, 2017, and prior to the filing of the underlying litigation. State Farm was able to hire the Lewis law firm, which filed an appearance, filed a responsive pleading, and took steps toward conducting discovery. The language in State Farm's policy states that "[t]he insured must give us or one of our agents notice of the accident or loss as soon as reasonably possible." Illinois courts have interpreted the similar phrases to mean "within a reasonable amount of time." *West Am. Ins. Co*, 238 Ill. 2d at 185 (interpreting "soon as practicable" to must be given "within a reasonable time").

¶ 37    Whether an insurer has received timely notice depends on the circumstances of each case. *County Mut. Ins. Co., Inc.* 222 Ill.2d at 311 (2006). State Farm failed to substantiate that the actual notice was untimely. State Farm had a right to be notified within a reasonable time and they were notified six months after the accident and three months before Matjasko filed her complaint. There is no specific language in Williams's policy requiring notice within a certain period, and lack of prejudice was a crucial factor in this case because State Farm did not demonstrate that the timing of the notice precluded any action State Farm would have taken if it were notified months earlier. In fact, in its October 11, 2017 letter retaining Defense Counsel, State Farm stated that "there were no unusual circumstances, and no further investigation was needed."

¶ 38    In *West American*, our supreme court found the insurer was required to provide coverage for a defamation claim under a commercial general liability police where the insured provided

written notice 27-months after the claim arose. The supreme court found that the insurer had actual notice of the lawsuit because it had "sufficient information to locate and defend the suit." *West American*, 238 Ill. 2d at 190. Given the facts and circumstances in the case *sub judice*, State Farm's actual notice was reasonable.

¶ 39        The second basis for State Farm's requested denial of coverage is Williams's failure to comply with the cooperation clause of his policy. A cooperation clause enables an insurer to prepare its defense to a claim and prevents collusion between the insured and injured party. *Founders Ins. Co. v. Shaikh*, 405 Ill. App. 3d 367, 374 (2010). To establish a breach of the cooperation clause, the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's failure to participate was due to a refusal to cooperate. *American Access Cas. Co. v. Alassouli*, 2015 IL App (1st) 141413, ¶ 17. Additionally, the insured's refusal to cooperate must be wilful. *United Automobile Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 27. However, for an insurer to be relieved of its contractual obligations under the policy, it must show that the insured's refusal to cooperate in its investigation caused the insurer substantial prejudice. *Alassouli*, 2015 IL App (1st) 141413, ¶ 18. "Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 500 (1977).

¶ 40        State Farm argues that it exercised a reasonable degree of diligence in seeking Williams's participation and its denial was due to his refusal to cooperate. State Farm's efforts at contact included the retention of a private investigator to contact Williams in person, a visit to Williams's residence by Ramos, multiple letters to Williams from Donaldson and Shackelford,

State Farm employees, and Judd, the attorney retained to represent Williams, and multiple unanswered phone calls and voice mail messages to Williams's cell phone.

¶ 41    However, State Farm's claim file demonstrated that it was aware Williams had not received its June 19, 2017 reservation of rights letter as he did not sign for it. Additionally, State Farm's October 4, 2017 reservation of rights letter was incorrectly addressed to Apartment 1, instead of Apartment 2. As a result, that letter was not delivered and returned to State Farm on December 12, 2017. There is no evidence in the record that State Farm attempted contact with Williams after November 2017. Instead, all further attempts at contact appear to have been made by Judd of the Lewis law firm. However, State Farm's letter retaining the law firm provided the incorrect address for Williams. Subsequently, Judd's January, February, and March 2018 letters all contained the incorrect address. Judd learned of this error on March 21, 2018 after Sonne informed him that Williams resided at Apartment 2. However, there is no evidence that Judd or anyone from the law firm attempted to contact Williams again.

¶ 42    It cannot be determined if Williams received any of the incorrectly addressed letters. However, Ramos left the October 4, 2017 letter with a handwritten note urging Williams to call Donaldson and an October 17, 2017 letter requesting Williams to contact the Lewis law firm in Williams's mailbox. Therefore, Williams likely received those letters. However, there is no evidence that Williams ever received Judd's January and February letters. Sonne's only attempted to deliver Judd's March 2018 letter.

¶ 43    State Farm argues that Williams's refusal to cooperate caused State Farm substantial prejudice prejudiced because it could not adequately conduct a defense due to the lack of cooperation. However, in its June 7, 2017 letter, State Farm notified Williams that based on its

independent investigation, it believed Williams was liable and would extend liability coverage. In its retention letter, State Farm advised the Lewis law firm that no further investigation was needed and there were no unusual circumstances in this case. No facts or circumstances changed between the June 7, 2017 letter and State Farm's filing for declaratory judgment in June 2018 other than Williams's refusal to cooperate.

¶ 44 State Farm next argues that because there were no other witnesses to the accident, it could not conduct an adequate defense without interviewing Williams. However, State Farm failed to explore other possible avenues for information outside of Williams. State Farm could have deposed Matjasko, subpoenaed and deposed Matjasko's medical providers, and interviewed and deposed the first responders who assisted Matjasko after the accident. State Farm performed none of these actions prior to seeking declaratory judgment. As a result, its determination that this case was impossible to defend without Williams's cooperation was premature. See *Buckley*, 2011 IL App (1st) 103666, ¶ 53 (finding no substantial prejudice where insurer did not show it was dependent upon its insured for a full and complete disclosure of the facts or for preparation of a defense). Therefore, State Farm did not suffer substantial prejudice due to Williams's refusal to cooperate and the trial court did not err in granting of summary judgment in favor of Safeco.

¶ 45 CONCLUSION

¶ 46 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 47 Affirmed.